**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0157n.06

**No. 10-5784**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| KATHY W. LeFEVERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| COMMISSIONER OF SOCIAL | ) | EASTERN DISTRICT OF KENTUCKY |
| SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | | |

FILED
**Feb 07, 2012**
LEONARD GREEN, Clerk

Before:  SUHRHEINRICH, SUTTON and COOK, Circuit Judges.

SUTTON, Circuit Judge.  Kathy LeFevers asks us to reverse the district court's conclusion that an administrative law judge (ALJ) permissibly denied her benefits under the Social Security Act. Because substantial evidence supports the ALJ's decision, we affirm.

I.

After a car accident in September 2000, LeFevers received chiropractic treatment for pain in her neck and restricted movement in her left arm.  In December 2001, she began seeing Dr. Talmadge Hays, a primary care physician who determined that LeFevers suffered from bulging discs in her cervical spine and spinal cord compression.  Dr. Hays referred LeFevers to Dr. Henry Tutt, a neurosurgeon who evaluated LeFevers the same month and recommended surgery to fuse some of LeFevers's cervical vertebrae.  LeFevers refused surgery.

In May 2005, LeFevers saw several doctors for evaluation and treatment. She visited Dr. Hays in August and November of 2005 for medication refills. Dr. Hays followed up in January 2006, conducting an assessment of LeFevers's ability to perform work-related activities. He found that LeFevers: (1) could sit, stand or walk for one hour each out of an eight-hour workday; (2) could lift up to ten pounds occasionally, but could never lift more than that or carry any weight at all; (3) could occasionally bend but could not squat, crawl, climb, grasp with either hand, or reach above shoulder level; and (4) was "afraid to undergo nec[essary] surgery." AR 179. In May 2006, LeFevers had a second car accident and again came to Dr. Hays complaining of pain in her neck, arm and back.

In August 2007, LeFevers visited Dr. Ronald Dubin, an orthopedist who evaluated LeFevers's neck, back and MRI scans. He found several bulging discs in her cervical vertebrae and one bulging disc in her lumbrosacral spine. Dr. Dubin concluded that LeFevers's lower back problems were the result of her recent accident, but that 50% of her cervical spine problems were caused by the accident nine years earlier. Dr. Dubin recommended spinal decompression for LeFevers's lumbrosacral spine. LeFevers underwent the spinal decompression, and it relieved much of the pain in her lower back. Dr. Dubin noted that LeFevers had reached maximum medical improvement but would remain impaired due to the second car accident and would be unable to perform any work requiring "repetitive bending, stooping, lifting or crawling."

In May 2008, LeFevers visited Dr. Bradley Davis. Dr. Davis found that LeFevers had decreased range of motion in her neck and lower back but no joint deformities or decreased range

of motion in her upper extremities. Due to her decreased range of motion, Dr. Davis recommended that LeFevers be mildly restricted in "lifting, carrying, reaching, pushing, pulling, climbing, crawling, and environmental [exposure to] vibrations." AR 346. He found no evidence that LeFevers had a reduced tolerance for "stooping, bending, sitting, standing, moving about, handling objects, or traveling." *Id.* Dr. Davis found that LeFevers could stand, sit or walk for eight hours during the work day and could operate foot controls continuously.

LeFevers applied for disability benefits in 2005, claiming she had been disabled since the 2000 accident. The agency denied benefits, and the ALJ affirmed the denial. At the request of the Commissioner, the district court remanded her case for further consideration. The ALJ held a second hearing, compiling more information about the second accident and additional treatment notes from Drs. Hays, Dubin and Davis. The ALJ again found no disability, and the district court affirmed.

II.

LeFevers presses two claims on appeal: (1) the ALJ rejected the opinion of Dr. Hays, her treating physician, without providing good reasons for doing so; and (2) the ALJ relied on a vocational expert's testimony based on flawed hypotheticals.

*Treating physician*. ALJs must "evaluate every medical opinion [they] receive" about a claimant and give "controlling weight" to opinions from treating sources "[i]f [they] find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's]

case record." 20 C.F.R. § 404.1527(d), (d)(2). An ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight. *Id*.

In this instance, the ALJ considered the treatment notes from Dr. Hays, but gave them "little weight" because the assessments were "overstated" and "not consistent with the weight of the longitudinal medical treatment showing only sporadic, conservative treatment." AR 250. The ALJ relied on several features of LeFevers's treatment history that were inconsistent with Dr. Hays's assessment: LeFevers refused to undergo necessary surgery out of fear and declined to have non-surgical decompression performed on her cervical spine, even though the same procedure alleviated the pain in her lower back; she claimed she could not afford the surgery, an account inconsistent with the $42,000 settlement she received from the two accidents; she opted for conservative treatment of the pain, which was inconsistent with Dr. Hays's assessments of severe, life-altering pain; she received only sporadic care and tried not to take her medications unless absolutely necessary, and even then often took half-doses; and she was able to perform "essentially normal activities of daily living," which included caring for her children and her 20-year old daughter. The ALJ found that this "evidence demonstrates mild chronic pain with moderate, infrequent, episodes of exacerbation," as opposed to the kind of debilitating condition described by Dr. Hays. AR 249.

All of this amounts to "good reasons" for refusing to give controlling weight to a treating physician's opinion. The ALJ permissibly opted not to give Dr. Hays's opinion controlling weight.

*Vocational expert testimony*. The ALJ also found LeFevers was not entitled to benefits because the Commissioner identified many jobs in the national economy that LeFevers could perform. AR 252. *See* 20 C.F.R. §§ 404.1560(c), 404.1566. An ALJ may rely on the opinions of a vocational expert premised on an accurate portrayal of the claimant's impairments. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010). Had the ALJ improperly discounted Dr. Hays's opinion, LeFevers would have a serious argument here, as the hypothetical premised on the Hays opinion shows few available jobs. Yet because the ALJ permissibly discounted the Hays opinion, that requires LeFevers to show that the vocational hypothetical on which the ALJ relied did not reflect the assessments of two other opinions, those of Drs. Dubin and Davis, which the ALJ credited. AR 250. No reversible error occurred.

The ALJ asked the vocational expert:

> Assume the Claimant would be capable of light exertion, would be not capable of doing any climbing of ramps or ladders or scaffolds, no balancing, no exposure to vibrating equipment or torso vibration—either one. Simple instructions, occasional and casual contact with supervisors or co-workers, capable of making occasional adjustments to work place or work routine settings, work schedule. . . . The Claimant requires an object-focused environment. Now with these limitations and considering the Claimant's age and education level would there be jobs in the regional or national economy such a person might perform?

AR 430. The expert identified 6,400 positions in the state of Kentucky and 305,000 in the nation for a person facing these qualifications and limitations. AR 431. The ALJ followed up by asking:

> Light exertion, no climbing of ladders, ropes, or scaffolds, no crawling, no more than occasional climbing of ramps or stairs or stooping or bending or crouching, no sitting

>or standing and each in excess of 30 minutes uninterrupted, no overhead motions with the . . . non-dominant left upper extremity. No more than frequent reaching, pushing, or pulling—and when I say reaching I mean reaching in other directions other than of overhead—with a non-dominant left upper extremity. . . . With these additional limitations, [ ] would this effect the answer to the prior hypothetical?

AR 431. The expert responded that these limitations would reduce the number of available jobs by half, leaving 3,200 jobs in the region and 146,000 in the nation. AR 431.

As LeFevers sees it, these hypotheticals omitted restrictions identified by the doctors on whom the ALJ relied: (1) Dr. Dubin's opinion that LeFevers could not perform "repetitive" lifting and (2) Dr. Davis's restriction on more than occasional reaching. As to the first point, the hypothetical assumed LeFevers could perform light work, defined to include "lifting no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b) (emphasis added). Dr. Dubin is not an agency doctor, and nothing indicates he was using the term "repetitive"—or not using the term "frequent"—in any technical sense. In ordinary nomenclature, a prohibition on "repetitive" lifting does not preclude a capacity for "frequent" lifting, as the district court held. No reversible inconsistency exists.

As to the second point, the relevant hypothetical assumes that LeFevers can handle jobs requiring "no more than frequent reaching." LeFevers complains that this assessment is inconsistent with an agency disability form filled out by Dr. Davis, in which he checks a box saying that she could engage in "occasional[]" reaching. She is right about the inconsistency but wrong to say it makes a difference. Dr. Davis issued a four-page report about his treatment of LeFevers and her

medical condition, which concluded that there was only a "mild restriction in [LeFevers'] tolerance for . . . reaching." AR 346. Any discrepancy between the form and the report was resolved by the ALJ in his findings concerning LeFevers' residual functional capacity. There, the ALJ finds she can perform "no more than frequent . . . reaching." AR 245–46. LeFevers has not challenged the validity of this finding (other than to say Dr. Hays's opinion should not have been discounted), and accordingly cannot credibly complain that it should not have been a premise of this hypothetical presented to the vocational expert. No error occurred.

## III.

For these reasons, we affirm the denial of benefits.